DULUTH CHAMBER OF COMMERCE *vs.* JOSEPH E. KNOWLTON and another.

December 24, 1889.

Accord and Satisfaction—Part-Payment.—The payment of a part of a debt or demand will in no case discharge the whole without a release of the residue.   To constitute an accord and satisfaction, the payment must have been *accepted* as such.   The mere retention by the creditor of money to which he is entitled absolutely will not amount to an accord and satisfaction, although tendered or transmitted to him as payment in full of the demand.

Practice — Directing Verdict or Judgment.— If, when the evidence on both sides is closed, plaintiff is entitled, as a matter of law, to a verdict, the proper practice is to request the court to direct a verdict in his favor; but to order judgment, instead of directing a verdict, is, at most, an irregularity without prejudice, and no ground for a new trial.

Appeal by defendants from a judgment of the district court for St. Louis county, and from an order of *Holland, J.,* (acting for a judge of the 11th district,) refusing a new trial.

*S. D. Allen* and *C. M. Parkhurst,* for appellants.

*Snively & Craig* and *H. F. Greene,* for respondent.

MITCHELL, J.   It being desired that the Chamber of Commerce of Duluth might secure the services of Prof. W. F. Phelps, and organ-

ize a bureau to develop manufacturing in Duluth, to defray the expenses of which it was contemplated to secure the passage of an act by the legislature authorizing the raising of a fund by taxation, but this being a matter in the future, a subscription paper was circulated and signed by a large number of citizens of Duluth, including the defendants, as follows: "For the purpose of securing the services of Prof. W. F. Phelps, and organizing a force to develop manufacturing at Duluth, we, the undersigned, hereby subscribe the amount set opposite our respective names, and agree to and with each other, and to and with the said Chamber of Commerce of Duluth, that we will pay such sum to the treasurer of said chamber of commerce, on demand, in each of the years 1887, 1888, and 1889. It is understood that, in case a fund for the above purpose is realized from taxation under a law to be hereafter passed by the legislature of Minnesota, the subscribers hereto shall be called upon only for the deficiency not realized under such law." The sum set opposite the name of each subscriber was $250. Immediately after the guaranty subscription, and in reliance upon it, the chamber of commerce contracted with Prof. Phelps for his services for three years, at an average annual salary of $5,000, payable in monthly instalments. The contemplated law for raising the money to pay this expense by taxation was passed, (Sp. Laws 1887, c. 321,) but, owing to the refusal of the city council to levy a tax, nothing was ever realized under it; and the chamber of commerce from time to time made what they called "assessments" on the subscribers to the guaranty fund in order to meet Prof. Phelps's salary and other expenses. On the 6th of June, 1887, they called on each subscriber for a payment of $50 on their subscription; on October 3, 1887, for another, of $100; and on March 6, 1888, for a third, of $50. The only payment ever made by defendants was one of $50, August 12, 1887, by check sent by mail to the treasurer of the chamber of commerce, on which the money was obtained and retained. This check, drawn by defendants on their bankers, read: "Pay to the chamber of commerce or order fifty dollars, *in full of our subscription.*" This action was brought to recover $150, the unpaid balance of these so-called "assessments," and the defendants interposed two defences: *First,* false representations, by

which they were induced to make the subscription; *second,* accord and satisfaction by the payment of the $50, August 12, 1887.

The record shows that the first defence was wholly unfounded, and it is not now urged. As to the second, the plaintiff contends that the facts bring the case within the doctrine that payment of a lesser sum on the day (or afterwards) in satisfaction of a greater liquidated and undisputed sum cannot be a satisfaction for the whole. We prefer, however, to place our decision upon the ground that there is no evidence whatever that plaintiff ever accepted the $50 in satis- faction of the whole subscription. The payment of the smaller sum, without any release by the plaintiff, would not constitute a satisfac- tion of the residue. It must have been *accepted* as payment in full. The mere retention of the money (to which plaintiff was entitled un- conditionally) would not amount to a release, or constitute an accord and satisfaction, although it knew that it was tendered as such. See *People* v. *Supervisors,* 40 Hun, 353.

We have made no reference in the statement of facts as to what had, prior to sending the check, passed between defendants and one of the directors of the Chamber of Commerce, because it was wholly immaterial, for several reasons. It did not tend to prove that the director agreed to release defendants on payment of $50; and, if he had, there is nothing tending to show that he had any authority to do so; and, further, it does not appear that what transpired between him and defendants was ever communicated to the board of direct- ors, or to any officers authorized to act for the plaintiff in the prem- ises.

The defendants now, and apparently for the first time, raise the point that this subscription was an agreement to pay one entire sum of $250, and therefore, under a familiar rule, it cannot be subdivided and split up into several causes of action. The question whether the rule referred to applies to this subscription does not arise in this case. Should plaintiff bring another action to recover the remaining $50, and the judgment in this case be pleaded in bar, the question will arise, but not till then.

The only other question in the case is one of practice. When the evidence closed, and both parties had rested, the plaintiff moved

for judgment on the pleadings and evidence, which the court granted, and this is claimed, on the authority of *Woodling* v. *Knickerbocker*, 31 Minn. 268, (17 N. W. Rep. 387,) to have been error. We are inclined to think that plaintiff was entitled to judgment on the pleadings alone, and, if so, clearly the ruling of the trial court was right. But, in any event, it is very clear that upon the evidence plaintiff was entitled to a verdict for the amount claimed in the complaint, and to have the court direct the entry of such verdict, which it undoubtedly could have done without consulting the jury. The practice adopted in this case was informal, as the proper way is to request the court to direct a verdict. But this is a question of names and forms, and not of substance; for, practically, it can make no difference whether the action of the court is in the form of a direction of a verdict or of an order for judgment. The irregularity complained of worked no prejudice to defendants, and is no ground for a new trial. Without discussing what is said in *Woodling* v. *Knickerbocker*, *supra*, as to the irregularity of the practice there adopted, it is enough to say that the case is distinguishable from the present in the fact that part of the defendants made the motion when plaintiffs rested, but they themselves had not rested.

Order and judgment affirmed.